Nilda G. THOMAS, Plaintiff–Appellant,

v.

COMPUWARE CORPORATION,
Defendant–Appellee.

No. 02–1995.

United States Court of Appeals,
Sixth Circuit.

July 23, 2004.

Before BOGGS, Chief Judge; BATCHELDER and SUTTON, Circuit Judges.

BATCHELDER, Circuit Judge.

Appellant Nilda Thomas appeals the order of the district court granting appellee Compuware Corporation's motion for summary judgment on Ms. Thomas's Title VII claims. For the reasons stated below, we affirm the judgment of the district court.

## I. BACKGROUND

Compuware, a business productivity software and services company, employed Ms. Thomas, beginning in September 1998, for roughly 18 months as a launch manager. Ms. Thomas was apparently the first African–American hired to that position. The letter offering Ms. Thomas employment provided for salary reviews "about twelve (12) months from your date of hire, and approximately every twelve (12) months thereafter," as well as performance reviews beginning six months after hire and then every twelve months thereafter. Her first performance review appears to have been satisfactory although that review noted that Ms. Thomas should "increase product and industry knowledge."

Ms. Thomas alleges that in April of 1999, Compuware gave similarly situated managers raises ranging from five percent to 15 percent, in keeping with the company's alleged policy of giving increases to all managers every April. Ms. Thomas did not receive a raise at that time, nor did she until November 1999, when she received a raise that was retroactive to September 1999 (the time her hiring letter stated she would be eligible to receive a raise). Ms. Thomas alleges that this raise was the lowest given any manager on her level. Compuware notes that Ms. Thomas's performance reviews were not satisfactory; that she needed to work on her written work product, communication and teamwork skills, and on her knowledge of the products. Ms. Thomas agreed only that she could benefit from greater product knowledge, and considered the other criticisms no more than "Nilda bashing." Her superiors asked Ms. Thomas to participate in a business writing course, but she did not because she thought "it would have been a waste of my time."

Ms. Thomas also complains of being passed over for promotion on three separate occasions. The first of those occasions was with respect to a job that was never filled. The next position she sought went to Karen Carleton, a Caucasian female, who, Thomas alleges "did not have a degree in marketing or advertising [or] marketing or advertising experience." The third management position for which Ms. Thomas applied was ultimately filled by Richard Leazer, a Caucasian male, who she claims lacked the job qualifications as stated by Compuware in the official job listing.

Ms. Thomas requested and was granted a medical leave of absence in March, 2000. Her immediate supervisor completed a performance review for the previous six-month period shortly after Ms. Thomas went on leave, but did not deliver that review to Ms. Thomas because Thomas was gone and the supervisor herself then left Compuware. This review, however, reflects Ms. Thomas's unsatisfactory performance for reasons similar to those given in her earlier reviews. While on leave. Ms. Thomas sent a letter to her superiors at Compuware requesting her annual increase in salary. She returned from this leave of absence on May 18, 2000, at which time she again inquired about her performance review and salary increase. Ms. Thomas was then provided the review that had been completed while she was on leave. Although that review reflected an "unacceptable" level of performance, it did not result in a demotion or termination. Neither did it result in a salary increase. But Ms. Thomas viewed this performance review as a precursor to termination, and she resigned from Compuware on June 19, 2000.

On April 20, 2001, Ms. Thomas filed suit under Title VII of the Civil Rights Act of 1964, claiming race discrimination, and under the Family and Medical Leave Act. Compuware moved for summary judgment on all claims, and the motion was granted by the district court. Ms. Thomas appeals only the grant of summary judgment on the Title VII claims.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 674 (6th Cir.2000). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

To withstand summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir.1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Ms. Thomas's Early Complaints Are Time–Barred.

Compuware argues that Ms. Thomas's claims based on her failure to receive a raise in April 1999, and her failure to receive a promotion in July 1999 are time-barred because these were discrete acts, each of which Ms. Thomas was required to—but did not—raise before the EEOC within 300 days of the act's occurrence. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Ms. Thomas responds that Compuware waived the argument by failing to raise it before the district court. She is incorrect. Compuware raised the

*Morgan* time-bar issue in its reply brief in the summary judgment pleadings; that reply brief was filed immediately after the Supreme Court issued its opinion in *Morgan.* We hold that each of these claims is time-barred under *Morgan.*

## B. The Failure–to–Promote Claims

 Ms. Thomas claims that Compuware discriminated against her because of her race when it failed to promote her to the positions eventually filled by Karen Carleton, a Caucasian female, and Richard Leazer, a Caucasian male. To prevail on these Title VII claims, Ms. Thomas must first present evidence sufficient to make out a prima facie case, i.e., that:

> (1)[s]he is a member of a protected class; (2)[s]he applied for and was qualified for a promotion, (3)[s]he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied.

*Nguyen v. City of Cleveland,* 229 F.3d 559, 562–63 (6th Cir.2000). *See also Sutherland v. Michigan Dep't of Treasury,* 344 F.3d 603, 614–15 (6th Cir.2003) (discussing the "well-established" framework for Title VII discrimination claims). If she meets this burden, Compuware must show a legitimate, non-discriminatory reason for failing to promote her. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–3, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Ms. Thomas must then show that Compuware's articulated reason is merely a pretext for discrimination. *See id.*

It is undisputed that Ms. Thomas has demonstrated the first and third factors of her prima facie case. Compuware, however, denies that Ms. Thomas was qualified for the positions which she sought, and denies that those positions went to individuals whose qualifications were similar to Ms. Thomas's. For purposes of this appeal, we will assume that Ms. Thomas has met the requirements of the prima facie case, and we turn to Compuware's articulated non-discriminatory reasons for denying Ms. Thomas those positions and Ms. Thomas's burden of demonstrating that those reasons were pretextual.

Compuware contends that Ms. Carleton was better qualified than Ms. Thomas for the position of marketing manager in Recruiting because Carleton had a degree in public relations and communications, a strong managerial background and substantial experience. Similarly, Compuware claims that Mr. Leazer was better qualified than Ms. Thomas for the position of a market manager in North American Sales Marketing, not only because Leazer had, among other things, superior knowledge of Compuware's products and of information technology, but because Ms. Thomas was lacking in specific technical skills and knowledge required for the position. Our review of the record persuades us that Compuware met its burden of articulating a legitimate, non-discriminatory reason for hiring each of these two individuals.

We further conclude that Ms. Thomas has not provided evidence that Compuware's articulated reasons for denying her the two managerial positions she sought were pretextual. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Lewis v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000). Ms. Thomas asserts, in effect, two things that she hopes satisfies one of the above criteria. First, Ms. Thomas asserts that statistical analysis may provide evidence of pretext (*see, e.g., Hopson v.*

*Daimler Chrysler Corp.,* 306 F.3d 427, 437–38 (6th Cir.2002)), and that statistics show that no African–American had been promoted to the position of Marketing Manager. We have reviewed the record, and we find no statistical analysis.

Second, Ms. Thomas argues that the persons who did receive the promotions were not qualified because they either did not have the exact college degree as that listed in the job posting, or experience of the kind suggested by the job description. As to the position for which Ms. Carleton was hired, the degree in "marketing or advertising" specified in the job posting was merely "preferred," and Ms. Carleton's degree, while not in marketing or advertising, was in public relations and communications. Importantly, Ms. Carleton's management, communication and writing skills and experience well satisfied the posting's other qualification and experience requirements. The job posting for the position Mr. Leazer was hired to fill did, in fact, list a bachelor's degree in computer sciences, marketing or business as a requirement, and Mr. Leazer's degree was in English and technical writing. However, he met all of the other criteria in the posting, and—something Ms. Thomas overlooks—Ms. Thomas did not. Mr. Leazer was able to answer the technical questions that Compuware considered necessary for the job. Ms. Thomas was not. And Ms. Thomas's evaluations demonstrate that her writing skills did not meet Compuware's standards. Because Ms. Thomas failed to present evidence sufficient to raise a genuine issue as to pretext, Compuware's motion for summary judgment was properly granted as to these failure-to-promote claims.

## C. The November 1999 and April 2000 Pay Raise Allegations

■ To establish a prima facie case of disparate treatment because of race with regard to the salary increases to which she contends she was entitled, Ms. Thomas must present evidence that she (1) is a member of a protected group; (2) was subjected to an adverse employment action; (3) was qualified for the position; and (4) was treated differently from similarly situated individuals who were not members of the protected class. *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538–39 (6th Cir.2002).

Ms. Thomas cannot demonstrate that she was subjected to an adverse employment action with regard to the November 1999 salary increase. While it is true that Ms. Thomas did not receive the salary review that was due in September 1999, she did receive that review in November, after Compuware took measures to correct the lapse. Although the review noted several performance deficiencies, Compuware nonetheless awarded Ms. Thomas a 4% increase, made retroactive to September when the salary review should have been completed. And, although Ms. Thomas complains that the amount of the salary increase was less than other employees received, she has presented no evidence that the increase was outside the range for which she was eligible.

Neither a late but retroactive pay raise, nor a pay raise within the applicable range but less than the employee subjectively believes she deserved, constitutes a "materially adverse employment action." *See Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 886–87 (6th Cir.1996) (holding that a "materially adverse" action is of the magnitude of a termination of employment, or a decrease in salary, or a material loss in benefits). We note, for the record, that in *White v. Burlington Northern & Santa Fe Railway Co.,* 364 F.3d 789 (6th Cir. 2004) (en banc), this court observed that *Kocsis* remains "the seminal case for defin-

ing adverse employment action." *id.* at 797, and reaffirmed that definition. *Id.* at 800. We further note that the somewhat delayed but retroactive pay *increase* Ms. Thomas views as an adverse employment action cannot be compared to the *suspension without pay* followed some thirty-seven days later by reinstatement with back pay that we found to be adverse in *White.* Because Ms. Thomas failed to provide evidence sufficient to establish a prima facie case of race discrimination with regard to the November 1999 salary increase, summary judgment on that claim was proper.

The extent to which Ms. Thomas raises as a separate claim of racial discrimination her failure to receive a raise in April of 2000 is unclear from the pleadings and the appellate briefs. Even assuming, however, that Ms. Thomas could make out a prima facie case of race discrimination with regard to this claim, she has presented no evidence sufficient to raise a genuine issue of fact as to pretext. Compuware provided legitimate, non-discriminatory reasons for its determination not to increase Ms. Thomas's pay at that time: Ms. Thomas's performance prior to her taking FMLA leave was in several particulars demonstrably unsatisfactory. Ms. Thomas points to no evidence save her own opinion to counter that appraisal, and she points to no similarly situated individuals—that is, individuals who were performing the same basic job and had received similarly unsatisfactory performance appraisals—to whose salary calculations she could compare her own. Rather than attempting to improve her performance, Ms. Thomas chose to terminate her employment, thus precluding any possibility of determining the truth of the testimony of Compuware's witnesses that a salary increase would have been forthcoming had her performance improved. Summary judgment was appropriate on this claim as well.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.